In the Matter of Thomas Edward DUNCAN, George Wesley Duncan, Thomas Newton Duncan, Edna Mae Duncan, and Benjamin Irvin Duncan, Debtors.

CHILLICOTHE STATE BANK and Federal Land Bank of St. Louis and Ola B. Lester, Movants,

v.

Thomas Edward DUNCAN, George Wesley Duncan, Thomas Newton Duncan, Edna Mae Duncan, and Benjamin Irvin Duncan, Respondents.

Bankruptcy No. 85–O1495–SJ–11.
Appeal No. 88–SJ–O1–8.

United States Bankruptcy Court,
W.D. Missouri,
St. Joseph Division.

Sept. 8, 1988.

Robert Cowherd, Chapman & Cowherd, Chillicothe, Mo., for Chillicothe State Bank.

David C. Stover, Chinnery, Stover & Waldo, Lee's Summit, Mo., for Federal Land Bank.

Robert Pyatt, Chillicothe, Mo., for Ola B. Lester.

William Needler, James Truax, William L. Needler & Associates, Ltd., Chicago, Ill.,

Jackie Bailey, Marceline, Mo., for debtors/defendants.

## ORDER DENYING MOTION OF DEBTORS FOR RECONSIDERATION OF ORDER DISMISSING APPEAL

DENNIS J. STEWART, Bankruptcy Judge.

On April 19, 1988, this court issued its written order dismissing the within chapter 11 proceedings and directing debtors' counsel to return any and all attorney's fees to the debtors. The debtors filed a motion for reconsideration, which was denied by the bankruptcy court on May 3, 1988. The debtors filed their notice of appeal on May 9, 1988. In the course of processing the appeal for transmission to the district court, this court, on May 11, 1988, entered its "order to submit documents for record on appeal," which provided in pertinent part as follows:

"Within thirty (30) days of the filing of the notice of appeal, appellant/appellee shall prepare and submit to the Bankruptcy Court a file folder containing a signed file-stamped copy of each document listed in the party's Designation of Contents for Appeal. The documents shall be numbered by the submitting party and accompanied by a table of contents."

The debtors sought successive extensions of time in which to comply with the above order. The court liberally granted each successive request for extension of time, granting finally, on July 5, 1988, an additional ten days in which to comply with the order. On July 15, 1988, the appellant debtors filed a record on appeal, but the documents were not in compliance with the above order in that many of the items were not file-stamped as required by that order. Accordingly, this court issued its order on July 19, 1988, granting the debtors to and including July 25, 1988, in which to produce the file-stamped copies. To date, however, the debtors have neither complied with the order of May 11, 1988, nor have they sought an additional extension of time in which to do so. Accordingly, as of August 2, 1988, the within appeal had been pending for nearly 3 months and had not yet been perfected. Therefore, on that date, this court issued its order dismissing the appeal, citing the General Order of the District Court of October 30, 1986, to the effect that:

"the judges of the Bankruptcy Court of the Western District of Missouri may hereafter dismiss appeals from decisions of the Bankruptcy Court filed in this court for failure of any of the parties thereto to perfect an appeal by not filing appropriate documents with the Clerk of the Court as provided in the Bankruptcy Rules or Sections of Title 28, U.S.C.A."

Now before the court is the motion of the debtors "to reconsider, vacate, amend, modify and alter its order dismissing appeal." In that motion, counsel for the debtors attack the legality of the requirement that the documents submitted be file-stamped and the power of the bankruptcy court to make such a rule; contend that there is no cause for dismissing the appeal based upon the actions or inactions of the debtors; and contend that the power to dismiss appeals cannot be conferred upon the bankruptcy court.[1]

---

1. Thus, in their "motion to reconsider, vacate, amend, modify and alter ... order dismissing appeal," the debtors contend that:

(1) "This Court has no power to alter, amend or supplement the Bankruptcy Rules adopted by the Supreme Court and approved by Congress, and this Court's order of May 1, 1988 is a nullity, as is this Court's Administrative Order No. 10 ... Only the District Court and the Appellate Panels have the power to make and amend rules governing practice and procedure for appeals providing those local rules are not inconsistent with the Bankruptcy Appeals rules.... Eighth Circuit Rule 7 does not require signed, file-stamped copies 'The Appendix need not be printed: It may be reproduced by any clearly legible process from the original record, from the parties' accurate copies of documents contained in the original record or from original typewritten material.' Then if the validity of documents is questioned, the original papers would be available by order of Court ..."

(2) "This Court has apparently without authority signed orders extending time for filing the record. There is no such authority, since the only motions permitted by the Bankruptcy Appeals rules are regulated by Rule 8011

The motion thus filed brings to the fore the potentially momentous issues concerning the powers of the bankruptcy court and the relationship of the district court and the bankruptcy court. First, the motion fairly calls into question the power of either the district court or the bankruptcy court to dismiss an appeal under circumstances such as those at bar—in which the time has run out for filing the record on appeal and no extension of time has been sought.[2] The General Order of our district court of October 30, 1986, suggests that dismissal would be appropriate "for failure of any of the parties (to the appeal) to perfect an appeal by not filing appropriate documents with the Clerk of the court as provided in the Bankruptcy Rules or Sections of Title 28, U.S.C.A." But a recent decision of the same district court, *In re Crisp*, 77 B.R. 215, 218 (Bkrtcy.W.D.Mo. 1987), holds that such would be an abuse of discretion unless the court conducted a hearing and determined that "bad faith, negligence or indifference has been shown." In that case, the district court also observed that, "(w)here bankruptcy appeals have been dismissed for failure to designate timely, there has usually been consistently dilatory conduct by the parties, a complete failure by the parties to do anything beyond filing a notice of appeal or failure by the parties to respond to a motion to dismiss." *Id.*

The authorities which were relied upon for such a constriction and straitening of the General Order of October 30, 1986, however, are not strictly applicable to the question of what action is appropriate when there is a failure to designate or supply the record on appeal within designated time limits and there is no timely request for an extension of time in which to do so. The decisional authority chiefly relied upon for the "more flexible standard requiring bad faith, negligence or indifference," *In re Beverly Mfg. Corp.*, 778 F.2d 666, 667 (11th Cir.1985), is one which concerns itself solely with the filing of briefs, not the designation of supplying of the record on appeal for transmission to the appellate court. As will be further seen below, the distinction is material. The other authority relied upon in the *Crisp* decision, *supra*, *In re Winner Corp.*, 632 F.2d 658, 659 (6th Cir.1980), was decided under the predecessor bankruptcy rules, which did not give the bankruptcy court the power to determine, under the standard of "excusable neglect," whether the time for filing the appellate record should be extended.[3] Under that prior set of bankruptcy rules, the bankruptcy court had no discretion except to transmit the appeal, regardless of the state of the record on appeal, to the district court "within 30 days after the filing of the statement of the issues unless a different time is prescribed by order of the district court." Bankruptcy Rule 807.

which requires adjudication in the District Court. Once the notice of appeals is filed, jurisdiction is immediately transferred to the district court, and the bankruptcy court may only perform ministerial acts specifically provided for in the Bankruptcy Rules."

(3) "The General Order of the District Court of October 30, 1986 is void and unconstitutional for the following reasons: There is no jurisdiction in the bankruptcy court to dismiss appeals and the district court may not devolve its appellate power on an inferior adjunct to dismiss an appeal brought in the district court. Only Article III judges can hear and determine appellate cases, and the bankruptcy court has no power whatsoever to determine whether an appeal has been perfected or not, or what constitutes substantial compliance with the appellate release. The bankruptcy court certainly has no power to make appellate rules."

2. Or, as in the case at bar, the time has run out and no request for any further extension of time has been timely filed.

3. The rules which were in existence at that time included Bankruptcy Rule 906 which contained the same language concerning enlargement of time for acts required to be done "by these rules or by a notice given thereunder or by order of court," but Rule 807 effectively swept away any power of the bankruptcy court to grant the enlargement by providing that "(t)he record on appeal shall be transmitted by the referee to the clerk of the district court within 30 days after the filing of the statement of the issues unless a different time is prescribed by order of the district court, and the clerk shall thereupon enter the appeal on the docket." But Rule 807 was abrogated from those bankruptcy rules which became effective on August 1, 1983.

Under the provisions of the bankruptcy rules which became effective on August 1, 1983, however, this provision has been eliminated. Accordingly, there is nothing in the new rules to except the times for designating and filing the record on appeal from the operation of Bankruptcy Rule 9006(b), which, by its own terms, applies to all instances in which "an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court." Consequently, under the clear provisions of that rule

"the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if the request therefor is made before the expiration of the period originally prescribed or as extended by a previous order or (2) on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect."

As the district court, in enacting its General Order of October 30, 1986, appears to have realized, the indefiniteness of the period during which an extension might be sought for excusable neglect left the period for filing the record on appeal virtually open-ended, particularly when the bankruptcy court had no power except to grant the requested extension and when denial of any such extension ordinarily was virtually without meaning. Therefore, in order to enable the bankruptcy court to expedite the supplying of the record on appeal, the General Order of October 30, 1986, was enacted, which gave the bankruptcy court power to dismiss the appeal for failure to designate or supply the record on appeal. The obvious general purpose of the General Order of October 30, 1986, was to expedite transmission of the full record on appeal to the district court.

The issue which now commonly confronts the bankruptcy court is that of how long to wait after time has run for designating or supplying the record on appeal before invoking the dismissal powers conferred on it by the abovementioned General Order of October 30, 1986. The dilemma is compounded by the open-ended provisions of Bankruptcy Rule 9006(b)(2), which place no limit on the time, as mentioned above, within which the appellant may request an extension of time on a showing of "excusable neglect. If the bankruptcy court must wait indefinitely, or until the failure to supply the record amounts to "bad faith, negligence, or indifference," the necessarily intended effect of the General Order—to encourage the expeditious filing of the record on appeal—is wholly lost. The same is true if the bankruptcy court must, as the district court in *In re Crisp, supra,* appears to hold, launch an inquiry and create a record to determine whether the failure to designate or supply the record is not due to bad faith. In such a context, the failure of the appellant timely to designate the record on appeal and to supply it is rewarded only by an inevitable grant of an extension of time in which to do so.

The enactment of the General Order of October 30, 1986, accordingly, would seem to have no other logical effect than to grant the bankruptcy court the power to dismiss the appeal immediately after the time had run out for filing the record on appeal. Any other action, as observed above, would result in the granting of an unwarranted extension of time not in conformance with the requirements of Bankruptcy Rule 9006, *supra.* After the dismissal, it would be open to the appellant to seek reconsideration—and an appropriate enlargement of time—by means of an appropriate motion and a showing of "excusable neglect."

This, in fact, was the procedure utilized by this court in *In re Crisp, supra.* The court dismissed the appeal two days after the time had run out for filing the record on appeal. On the same day as the dismissal, but shortly thereafter, the appellants filed a motion for extension of time, which this court treated as a motion for reconsideration. The court therefore issued its order on December 30, 1986, holding that attorney error does not constitute "excusable neglect" within the meaning of Bankruptcy Rule 9006. "Ordinarily, under Rules 8002–8006 of the Bankruptcy Rules,

'inadvertence or mistake of counsel does not constitute excusable neglect.'" *Matter of Estate of Butler's Tire & Battery Co., Inc.,* 592 F.2d 1028, 1034 (9th Cir.1979). This ruling, moreover, seems to have been appropriate under the particular circumstances of that case, whether the "excusable neglect" standard applied or whether the "bad faith, negligence or indifference" standard (usually reserved for the failure to file appellate briefs) was applied. For cases applying the latter standard usually state that the rationale for the more flexible standard is to minimize injury to a client on account of counsel's dereliction. "The impact of such a sanction is imposed primarily on the client rather than on the attorney, and primary consideration of alternative sanctions should therefore be the function of the appellate court." *In re France,* 63 B.R. 775, 776 (Bkrtcy.D.N.H. 1986); see also *In re Comer,* 716 F.2d 168, 177 (3d Cir.1983). In the *Crisp* case, *supra,* however, the parties were attorneys at law representing their own interests.[4]

The district court, nevertheless, reversed the decision of this court, citing the "bad faith, negligence or indifference" standard explained above. 77 B.R. at 218.

## II

▆▆▆ In the case at bar, whether the applicable standard is one of "excusable neglect" or of "bad faith, negligence or indifference," the facts merit the sanction of dismissal. The court liberally granted 3 successive extensions of time, upon the appellants' successive requests therefor[5], in which to permit the appellants to supply the record on appeal. Still, they failed to do so. Even now, moreover, the appellants do not propose to comply with the court's directive to file the record on appeal. Rather, they challenge the legality of the requirement that copies thereof be filed which contain the court's filing stamp. They insist upon filing copies of the record which come from their own files and consequently do not bear the filing stamp of the court and therefore are without the assurance that they are exact copies of what was initially filed with the court. They contend that it is beyond the rulemaking power of the court to impose such a requirement. Bankruptcy Rule 9029, however, provides that "(e)ach bankruptcy court by action of a majority of the judges thereof may make and amend rules governing its practice and procedure not inconsistent with these rules." With respect to the record on appeal, Bankruptcy Rule 8007(c) provides that, when the bankruptcy court, as in this case, has directed retention of the record— i.e., the original copies—in the bankruptcy court, "the parties shall provide to the clerk of the bankruptcy court copies of any papers and the clerk shall transmit those copies to the district court ..." The local rule now attacked, in imposing the requirement of file-stamped copies, is not inconsistent with this rule and is designed to facilitate it and to provide some assurance that copies of the record thus submitted are true copies of what is on file with the bankruptcy court. The local requirement is rooted in reason and common sense, is not oppressive, and is thoroughly consistent with the related bankruptcy rules. The requirement must therefore be upheld against the belated challenge of the debtors, which has unduly delayed the transmission of this appeal to the district court. They did not initially make any challenge to the requirement, but, as observed above, only sought successive extensions of time in which to comply with it. In this context, the untimely challenge to the requirement has worked simply to induce impermissible delay into the process of preparing the appellate record for transmission to the district court and therefore to warrant dismissal of the appeal, either under the "bad faith, negligence or indifference" rubric or the "excusable neglect" standard.

---

**4.** In that case, the trustee had brought an action to avoid as a preference under section 547 of the Bankruptcy Code a prepetition mortgage filed by counsel for the debtors.

**5.** The order for filing of the record on appeal was issued on May 11, 1988, and directed the filing of the record within 30 days. Two consecutive extensions of time were thereafter granted by this court to and including July 15, 1988.

### III

■ The debtors mount an attack upon the District Court's General Order of October 30, 1986, characterizing it as an unlawful confiding of Article III duties to a non-Article III court.[6] It has been previously observed, however, that, under the current statutory scheme regulating the jurisdiction of the bankruptcy courts, district courts have the power, consistent with constitutional restrictions, to grant bankruptcy judges decision-making power in any and all matters except those which arise under state law and as to which, therefore, such a grant of power would affront the rule of *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). See *Matter of Golden Gulf, Ltd.*, 73 B.R. 685, 693, 694 (Bkrtcy.E.D.Ark. 1987), to the following effect:

> "Section 151, Title 28, United States Code, which defines bankruptcy court jurisdiction, according to its letter, leaves it open for a district court to grant bankruptcy judges jurisdiction to act within the parameters of its considerable limitations. That section provides as follows:
>
> > 'In each judicial district, the bankruptcy judges in regular active service shall constitute a unit of the district court to be known as the bankruptcy court for that district. Each bankruptcy judge, *as a judicial officer of the district court*, may exercise the authority conferred in this chapter, with respect to any action, suit, or proceeding and may preside alone and hold a regular or special session of the court, *except as otherwise provided by law or by rule or order of the district court.*' (Emphasis added.)
>
> The standard canons of statutory construction teach that the phrase last emphasized above containing the modifying language pertains to both of the prior clauses of the compound sentence. 'The presence of a comma separating a modifying clause in a statute from the clause immediately preceding, is an indication that the modifying clause was intended to modify all the preceding clauses, and

> not only the last antecedent one.' 73 Am.Jr.2d *Statutes* section 231, p. 415 (1974). And the recent history of bankruptcy court jurisdiction further demonstrates that the district court may lawfully, by rule or order, confer its powers upon bankruptcy judges. The interim rule for bankruptcy court administration was approved as constitutional by each and every appellate court which considered a constitutional challenge to it, even though it did not have an express statutory authorization behind it such as is contained in section 151, *supra.* Utilization of the power thus conferred upon the district court to confer jurisdiction upon a bankruptcy judge to hear and determine an action arising under a federal statute— ... would not violate the rule of the *Marathon* case, *supra.* The federal appellate courts have unanimously held that that rule does not constitutionally proscribe a bankruptcy judge's hearing and determining a cause of action which was created under the federal, as opposed to state, laws. '(T)he Court has never indicated that all *federally* created private rights must be adjudicated in Article III courts. *Northern Pipeline* effectively held that certain private *state* law claims, when adjudicated within the federal system, must be decided by Article III courts.' *Kalaris v. Donovan*, 697 F.2d 376, 386 (D.C.Cir.1983); '(T)here is nothing in *Marathon* which constitutionally or otherwise requires federal law issues to be decided by an Article III court.' *In re Anthony Tammaro, Inc.*, 56 B.R. 999, 1005 (D.N.J.1986); cf. *In re Price–Watson Co.*, 66 B.R. 144 (Bkrtcy. S.D.Tex.1986). These authorities find a substantial basis for this conclusion in the *Marathon* case itself, *supra*, 102 S.Ct. at 2877, to the following effect:
>
> > '(W)hen Congress creates a statutory right, it clearly has the discretion, in defining that right, to create presumptions, or assign burdens of proof, or prescribe remedies; it may also provide that persons seeking to vindicate that right must do so before a particularized tribunal created to perform the specialized adjudicative tasks related

---

**6.** See note 1, *supra.*

to that right. Such provisions do, in a sense, affect the exercise of judicial power, but they are also incidental to Congress' power to define the right which it has created.' "

The eminent facts that other statutes, whose constitutionality has been upheld,[7] create bankruptcy appellate panels who determine bankruptcy appeals on their merits are sufficient to dispel the debtors' contention that it somehow offends Article III of the Constitution to grant bankruptcy judges the power to determine bankruptcy appeals. Nor can there be any merit to the debtors' contention that the bankruptcy judge should be disqualified from dismissing the appeal on the ground that the judge himself has an interest in the result on appeal. Decisional law recognizes that a judge does not have any disqualifying interest in a case simply by reason of the fact that he or she has once rendered a decision on the merits of the case, for judges are not required to recuse themselves when cases are remanded to them by an appellate court.[8]

Therefore, for the foregoing reasons, it is hereby

ORDERED that the debtors' motion for reconsideration of the order dismissing their appeal be, and it is hereby, denied.[9]

7. Of course, appeals to appellate panels, rather than to a district court, can be taken only by consent of the parties. "This requirement must have been inserted in the legislation to ensure compliance with *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, which may be read to require the intervention of a tenured judge at some level of the bankruptcy process absent the consent of the parties. Whether *Marathon* really requires this is a moot matter; Congress thought it did." 1 Collier on Bankruptcy para. 3.03(1)(iii), p. 3–159 (15th ed. 1988). But it cannot be said that, under appropriate circumstances, the district court cannot confer some appellate jurisdiction on bankruptcy judges in respect of "core" proceedings—such as that at bar—which admittedly do not "require the intervention of a tenured judge at some level."

8. A judge's prior adverse ruling is not sufficient ground for recusal. See, e.g., *United States v. Studley*, 783 F.2d 934 (9th Cir.1986).

9. Debtors' counsel points out that the Appellate Rules of the United States Court of Appeals for the Eighth Circuit provide that the "Appendix need not be printed: it may be reproduced by any clearly legible process from the original record, from the parties' accurate copies of documents contained in the original record or from original typewritten material." The court has searched through rule 7 of the appellate rules of the Eighth Circuit—to which debtors' counsel has attributed this quotation—and is unable to find it. Even if the quoted portion exists, however, it could not prevent the bankruptcy court from requiring file-stamped, signed copies to be produced for the record on appeal.

